IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

AMERICAN NATIONAL PROPERTY
& CASUALTY COMPANY                                                                    PLAINTIFF

VS.                                                                                   No. 2:05CV26-D-B

PETER KELLY AND STEFANIE KELLY                                                        DEFENDANTS

OPINION GRANTING MOTION FOR SUMMARY JUDGMENT

Presently before the Court is Plaintiff's motion for summary judgment. Upon due consideration, the Court finds the motion shall be granted.

*A. Factual Background*

American National Property & Casualty Company ("ANPAC") issued a Mississippi Special Homeowners Policy ("Homeowners Policy") and a Personal Umbrella Policy ("Umbrella Policy") to the Defendants Peter and Stefanie Kelly. Plaintiff filed this declaratory judgment action in response to the filing of the case of *Greg Cathey, et. al. v. Peter Kelly and Stefanie Kelly* in the Circuit Court of Desoto County, Mississippi, Civil Action No. CV 2004-0286CD ("Underlying Case"). ANPAC filed this declaratory action seeking to have its rights and obligations with regards to potential insurance coverage determined by this Court. Specifically, ANPAC believes it is not responsible to indemnify the Defendants because the conduct alleged in the underlying case is excluded under the Defendants' two insurance policies.

In the underlying case, the Plaintiffs, the Catheys, allege that they began to use the services of the Defendants as a home daycare service for their three minor children during late 2003 and early 2004. The Kellys assert that Stefanie Kelly occasionally babysat friends' children and agreed to help the Catheys on a temporary basis because their daughter Ainsley had a special

condition requiring an apnea monitor. Defendants began to care for Ainsley when she was approximately nine months old and the Plaintiffs paid the Kellys weekly for the cost of such services.

On October 21, 2004, Plaintiff Deana Kelly was notified by Defendant Stefanie Kelly that Ainsley had suffered an injury. Allegedly, Ainsley fell from an ottoman located in the Kellys' home. The Catheys immediately went to Defendants' home and took Ainsley and her sister from the home. After medical testing, it was determined that Ainsely had been the victim of "Shaken Baby Syndrome" and other physical injuries. Ainsely was diagnosed with a bruise over her right forehead, both old and new intra-cranial bleeding, bi-lateral retinal hemorrhage, and a frontal skull fracture. The injuries were allegedly the result of Defendants' gross negligence or intentional acts. In the underlying case, the Defendants have been sued for compensatory and punitive damages. The Defendants have sought coverage under their homeowners policy and umbrella policy.

Plaintiff ANPAC now moves for summary judgment stating that it is not required to pay under Defendants' two policies because the nature of the claims against Defendants are excluded in the policy. Specifically, ANPAC asserts that bodily injury or property damage resulting from intentional acts or occurring during business pursuits is excluded from coverage. In addition, the policy does not cover punitive damages. ANAPC further claims that for coverage to exist under the umbrella policy there must be an occurrence. ANPAC states that an occurrence as defined by the policy only pertains to accidental injuries. Finally, ANPAC states that babysitting or child care qualifies as business pursuit because one is compensated for those services, and in this case the child was not a relative of the Defendants.

Defendants counter stating that the Kellys were not operating a child care or daycare

facility under Mississippi law. In addition, Defendants state that an occurrence did occur because the child accidently fell off of the ottoman. Defendants claim that there is a genuine issue of material fact on whether it was an accident or not. In addition, Defendants claim that although punitive damages are excluded, Plaintiff is still liable for compensatory damages. Finally, the Defendants argue that Defendant Peter Kelly is covered because he had no role in babysitting the Cathey children. The Defendants state that Peter Kelly did not know the children, their parents; did not keep records of any payments received; was not involved in the child care; did not know any other children his wife babysat; did not keep records of income earned by his wife; had no knowledge of the allegations in this lawsuit; and had no knowledge of the terms and conditions of the care of the Cathey children. Thus, the Defendants claim a genuine issue of material fact applies to Peter Kelly's insurance coverage.

### B. *Standard of Review*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. V. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) (the burden on the moving party may be discharged by 'showing...that there is an absence of evidence to support the non-moving party's case" Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trail.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. At 2553, 91 L. Ed. 2d At 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(C) mandates

the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. At 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. V. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 536, 552 (1986).

*C. Applicable Law*

Federal Courts sitting in diversity must apply state substantive law. See Krieser v. Hobbs, 166 F.3d 736, 739 (5th Cir. 1999). "The core of what has become known as the 'Erie Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law." Hanley v. Forrester, 903 F.2d 1030, 1020 (5th Cir. 1990) (*citing* Erie R. Co. v. Thompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 2d 1188 (1938)). When deciding an unsettled issue of state law, this Court must consider how the Mississippi Supreme Court has, or would, interpret the question. See Batts v. Tow-Motor Forklift Co., 978 F.2d 1386, 1389 (5th Cir. 1992) (*citing* American Waste & Pollution Control Co. V. Browning-Ferris, Inc., 949 F.2d 1384, 1386 (5th Cir.1991)). The Court must first determine whether any final decisions of the Mississippi Supreme Court are dispositive. See Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992). When a Court must make an Erie guess, it is not the Court's role to create of modify state law, but rather only to predict it. Batts, 978 F.2d at 1386.

This case implicates insurance and the law of insurance contracts; as such, Mississippi's

law governing the interpretation of insurance contracts is binding. An insurer "has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, but it has absolutely no duty to defend those claims which fall outside the coverage of the policy." Roy Anderson Corp. v. Transcontinental Ins. Co., 358 F.Supp.2d 553, 559 (S.D. Miss. 2005) (*quoting* Farmland Mut. Ins. Co. v. Scruggs, 886 So. 2d 714, 719 (Miss. 2004)). The insurer is only required to defend when the pleadings state an injury that is within the coverage of the policy. Mulberry Square Productions, Inc. v. State Farm Fire & Cas. Co., 101 F.3d 414, 421 (5th Cir. 1996). To determine whether the insurer has a duty to defend, a Court must "look to the allegations in the underlying state court complaint." Am. Guar. & Liab. Ins Co. v. The 1906 Co., 273 F.3d 605, 610 (5th Cir. 2001).

"The interpretation of an insurance policy is a question of law, not one of fact." Noxubee County Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1165 (Miss. 2004). Mississippi insurance law is clear that an insurance policy that is plain and unambiguous will be construed exactly as written. Id. (citing Paul Revere Life Ins. Co. v. Prince, 375 So. 2d 417, 418 (Miss. 1979)); See Blackledge v. Omega Ins. Co., 740 So. 2d 295, 298 (Miss. 1999). Ambiguities in an insurance contract are construed against the drafter and in favor of the insured. See Centennial Ins. Co. v. Ryder Truck Rental, Inc., 149 F.3d 378, 382-83 (5th Cir. 1998). When an insurance policy has two equally reasonable interpretations, the Court must adopt the one giving greater indemnity to the insured. See Caldwell v. Hartford Accident & Indem. Co., 248 So. 2d 209, 213 (Miss. 1964). Finally, terms of insurance policies, specifically exclusion clauses, must be construed against the insurer and in favor of coverage. See State Farm Mut. Auto Ins. Co. v. Scitzs, 395 So. 2d 1371, 1373 (Miss. 1981).

*D. Discussion*

The Plaintiff moves for summary judgment on a number of grounds. First, ANPAC states that coverage for the Defendants is precluded under ANPAC's policies' home child care exclusions. Second, ANPAC states that the allegations in the underlying case do not constitute an occurrence as defined by the policies. Third, ANPAC's policies do not allow coverage for intentional acts and intentional conduct. Finally, ANPAC's policies do not cover punitive or exemplary damages. The Court will consider each of ANPAC's arguments.

1. Business Pursuits

The Homeowners policy specifically excludes coverage for injuries sustained during "business" or "business pursuits." Business pursuits are defined as: (a) trade, profession, or occupation; and (b) home day-care services (which includes one or more persons in your care at any one time, for which you receive any compensation). Mutual exchange of home day-care services for which one receives no compensation and day-care for a relative are not considered business pursuits. Similarly, the Umbrella Policy excludes coverage for any person in the policyholder's care because of child care services and to any person who makes a claim because of personal injury to any person who is in the policyholder's care because of child care services provided by the policyholder. In bold letters the policy states that defenses and settlement coverage do not apply to anyone injured while in the policyholder's care.

After a review of the complaint in the underlying case and the depositions, the Court finds that the Defendants were involved in child care services when the injury to Ainsley Cathey allegedly occurred. In addition, the Court finds that Stefanie Kelly cared for the Cathey children from January until October 2004. The Court also finds that there was not a mutual exchange of home day-care services without compensation and that the Catheys and the Kellys were not

related.  Finally, Stefanie Kelly admitted in her deposition that she received $175 a week for taking care of the Cathey children.

From the factual information gleaned from the underlying state court complaint and the depositions attached to this motion as exhibits, it is clear to the Court that the Defendants were providing regular day-care services.  The policies in this case expressly and clearly exclude coverage for business pursuits and specifically "home day-care services" and "child care services." The Fifth Circuit stated, "If an insured's claims are unequivocal with regard to claiming injury or damages cause by acts which, if proved, would place the claim within an exclusion from coverage, there is no duty to indemnify."  Jones v. Southern Marine & Aviation Underwriters, Inc., 739 F. Supp. 315, 324 (S.D. Miss. 1988), *aff'd* 888 F.2d 385 (5th Cir. 1989); See American States Ins. Co. v. Natchez Steam Laundry, 131 F.3d 551, 554 (5th Cir. 1998). Here, the allegations that this injury occurred while the Defendants were providing child-care services is unequivocal.  Thus, the Defendants are excluded from coverage.

In addition, this Court has previously found that child-care services or day-care services constituted a business or business pursuit for insurance exclusion purposes.  See Preferred Risk Mut. Ins. Co. v. Springer, 1996 WL 672116 (N.D. Miss. 1996).  In that case, the Court found the child-care services constituted a business even though the defendants were not making a profit. Id. at *2.  The Court granted summary judgment because the defendants were regularly providing home day care services for compensation.  Id.  In the case *sub judice*, the Court finds that the insurance exclusions were plain and unequivocal in stating that child care for compensation was not covered by the policies.  Therefore, this Court will honor its prior precedent and find that the Defendants were conducting a business under the definition of the policies and are excluded from coverage for these alleged acts.

2. Occurrence, Intentional Acts, and Punitive Damages

The Court finds that a thorough analysis is not necessary for the issues of the term "occurrence," intentional acts, and punitive damages. First, the Defendants concede that punitive damages would not be covered by the policies. Therefore, that issue is moot. In addition, the policies clearly state that intentional acts are excluded from coverage. Finally, although the term "occurrence" is a term of art in insurance contracts, the Court is satisfied that an "occurrence" did not take place here. The Court further finds that because the business pursuit exclusion applies, it is not necessary to fully address the occurrence issue.

3. Peter Kelly as Innocent Insured

The Defendants claim that a genuine issue of material fact exists as to insurance coverage for Peter Kelly. The Defendants state that Peter Kelly did not babysit the Cathey children; did not know the parents of the Cathey children; was not involved in the care of the children; kept no records of his wife's income; and had no personal knowledge of the allegations pertaining to this lawsuit. The Defendants essentially claim that Peter Kelly is an innocent insured and entitled to coverage.

In McFarland v. Utica Fire Ins. Co of Oneida, the Court found that an innocent wife could recover on the policy despite the intentional acts of her husband. 814 F. Supp. 518 (S.D. Miss. 1992), *aff'd*, 14 F.3d 55 (5th Cir. 1994). In that case, the language of the insurance policy was found to be ambiguous and was construed against the insurer. Id. "The language of the exclusion withholds coverage for 'an' act committed by 'an' insured, not 'an' act committed by 'any' insured. Hence, one may also reasonable conclude that the exclusion provision is directed only at the acting insured." Id. at 525. ANPAC's Homeowners Policy excludes coverage "arising out of business pursuits of any insured." Thus, one could reasonably conclude that a business pursuit

of one insured would exclude coverage for all of the insureds. The Fifth Circuit found that the language "any insured" was sufficiently clear to deny coverage to an innocent insured. See Hall v. State Farm Fire & Cas.Co., 937 F.2d 210 (5th Cir. 1991). Finally, this Court found in Springer that the business pursuit of one defendant excluded coverage from both defendants. 1996 WL 672116. The language of that policy stated that liability and medical payments were excluded from coverage for any bodily injury arising our of or in connection with a business engaged in by an insured. Id. Thus, the Court finds that because of the plain language of both the Homeowners and the Umbrella policies, Peter Kelly is also excluded from coverage.

The Court finds it hard to believe that Mr. Kelly did not have some knowledge of the income of his wife from baby sitting or the allegations of this lawsuit. Those are topics that husbands and wives normally discuss. In addition, financial matters are a main issue of discussions in marriage, and normally finances are jointly held. Unless a husband and wife were severely estranged, the husband would almost certainly know the business activities of his wife and be intimately familiar with a lawsuit involving her and their combined financial well-being. Because there were no allegations of estrangement or severe marital discord, the Court finds that Peter Kelly was familiar with the babysitting situation and is excluded from coverage under the insurance policies.

*E. Conclusion*

After careful consideration, the Court finds that there are no genuine issues of material fact in this case, and the Plaintiffs are entitled to summary judgment. It is clear that the Kellys were operating a home day-care or child care services for compensation in their home. It is equally clear by the unambiguous language of the policies that such services are excluded from coverage and injuries occurring in the operation of those services is excluded. In addition,

punitive damages and intentional acts are clearly excluded from coverage in these insurance policies. Finally, Peter Kelly is also excluded from coverage because the plain language of the policies clearly states the actions or business pursuits of any insured will exclude coverage. Thus, no genuine issues of material fact exist and Plaintiffs are entitled to a judgment as a matter of law.

A separate order in accordance with this opinion shall issue this day.

This the 9th day of December 2005.

/s/ Glen H. Davidson
Chief Judge